McKENNON v. JONES.

4-9613 244 S. W. 2d 138

Opinion delivered December 17, 1951.

*Mullis & McCain* and *Smith & Smith,* for appellant.

*Jim Merritt,* for appellee.

HOLT, J. Appellee, J. A. Jones, sued appellants, C. R. McKennon and his son, Joe Lee McKennon, individually, and as a partnership, (in tort) to recover damages for loss of honey bees and honey, alleged to have resulted, on July 1, 1947, while appellants were dusting, by airplane, a cotton crop, (owned by appellants, C. R. McKennon and son) with a poisonous and dangerous substance. Appellee, Reasor-Hill Corporation, manufacturers of the poison used, and Kern McClendon, who was employed by the McKennons to spread the poison on their cotton fields, were made third party defendants, on motion of the McKennons under the "Uniform Contributions Among Tortfeasors Act," 315 of 1941, (now Ark. Stats. 1947, §§ 34-1001—34-1009).

Appellants, in separate answers, made general denials. A jury trial resulted in the following verdict for appellee: "We, the jury, find for the plaintiff, J. A. Jones, and assess his damages in the total sum of $1,500; as against C. R. McKennon and Joe Lee McKennon, doing business as C. R. McKennon & Son in the sum of $1,250

of said sum, and Kern McClendon in the sum of $250 of said sum. We, the jury, find for the defendant, Reasor-Hill Corporation." From the judgment, in conformity with the verdict, is this appeal.

There was no contention that the verdict was excessive.

—(1)—

For reversal, appellants first argue that the evidence was not sufficient to support the verdict. We cannot agree. The record reflects that appellants, McKennon and son, employed appellant, Kern McClendon, to dust their cotton in a field near appellee's property and apiary, with a poison called "R-H Dust" to rid the cotton field of boll weevils. Kern used an airplane in spreading the poison and there is evidence that he flew over appellee's apiary and dusted his bees and bee hives with the poisonous dust, which caused the destruction of the bees, together with a large quantity of honey.

Appellee, Jones, testified: "Q. Did you see planes dusting July 1st? A. Yes, sir, I watched from the time it started until the end. Q. Which dusting killed your bees? A. Both of them. It came in until you couldn't hardly get your breath. You could stand 150 yards from the bees and you couldn't hardly see the bee hives there for it. * * * Q. What did you testify before as to how near Mr. McKennon's land is to you? A. How far is his land? Q. Yes. A. He has got land that runs up,—I will say it is,—I don't believe it is two hundred yards from mine. * * * Q. You mean to tell the jury now that that airplane was poisoning that field two mornings in succession? A. It poisoned the 30th and the 1st. The 30th of June." There was other testimony tending to corroborate appellee.

Appellant, Joe L. McKennon, testified that his firm bought cotton poison from the firm of Henley & Johnson Purina Feed Company, and employed the third party defendant, Kern McClendon, to dust their cotton.

J. T. Henley testified: "Q. Did your firm, Henley & Johnson, sell considerable cotton poison to Mr. C. R. McKennon or C. R. McKennon & Son for his Watson operation? A. Yes, sir. Q. What was the name, if you know, of the cotton poison? A. R-H Cotton Dust."

J. H. Davis, State Apiarist, on being asked whether he saw any white substance there on top or around the bee hives and its color, answered: "It looked a whole lot like lime,—something like a lime," and further answered: "Q. During your inspection of this yard and based on your experience, what would you say was the cause of the death of these bees? A. There is no doubt about it,—it was contact poison that had killed the bees. Evidence was in the hive itself to know that that was true."

Considering the evidence in its most favorable light to appellee, as we must, we think it substantial and sufficient to support the verdict.

—(2)—

Appellants, the McKennons, also argue that Kern McClendon, the third party defendant, was an independent contractor and therefore they were not responsible for his acts, in the circumstances. This contention is with-his acts, in the circumstances. This contention is without merit. While it is true that as a general rule, the employer would not be liable for the negligence of an independent contractor, there are exceptions to this rule. One exception is that where the work to be performed is inherently dangerous, as here, the employer will not be permitted to escape liability for negligent injury to the property of another, by an employee, to whom the employer has delegated, or contracted, the performance of the work.

In the case of *The Hammond Ranch Corporation* v. *Dodson,* 199 Ark. 846, 136 S. W. 2d 484, wherein we quoted with approval from an Arizona case, where the facts disclosed were, in effect, the same as those here, we said: "In that case one of the defenses interposed

was that the Hawks Crop Dusting Company was an independent contractor, and that, therefore, defendant was not liable for any damage suffered by the plaintiff. On that question the court said:

" 'As a general rule the employer is not liable for the negligence of an independent contractor. There are, however, certain exceptions to this general rule. One of such exceptions is that the law will not allow one who has a piece of work to be done that is necessarily or inherently dangerous to escape liability to persons or property negligently injured in its performance by another to whom he has contracted such work. This is especially true where the agency or means employed to do the work, if not confined and carefully guarded, is liable to invade adjacent property, or the property of others, and destroy or damage it. The defendant was within its legal rights in depositing the insecticide on its lettuce field for the purpose of ridding it of the worms with which it was infested, and it could do this work itself or it could contract it, but, because of the very great likelihood of the poisonous dust or spray spreading to adjoining or nearby premises and damaging or destroying valuable property thereon, it could not delegate this work to an independent contractor, and thus avoid liability. 39 C. J. 1331, § 1540; 14 R. C. L. 87, § 24; *Medley* v. *Trenton Inv. Co.,* 205 Wis. 30, 236 N. W. 713, 76 A. L. R. 1250; *St. Louis & S. F. R. Co.* v. *Madden,* 77 Kan. 80, 93 P. 586, 17 L. R. A., N. S., 788. We conclude that the facts bring this case within the named exception, and that, because of the dangerous character of the agency employed, the work was not delegable.' " See, also, *Giem* v. *Williams, Administratrix,* 215 Ark. 705, 222 S. W. 2d 800, and *Kennedy* v. *Clayton,* 216 Ark. 851, 227 S. W. 2d 934.

—(3)—

Appellants also contend that there was error in giving (over their general exceptions) the following in-

struction (No. 20): "You are instructed that the insecticide sold by Reasor-Hill Corporation to the defendants would be injurious to any insects which come in contact with it. In this connection, you are told that the defendants had a right to place such insecticide upon their cotton and they would not be liable for the death of any of plaintiff's bees which were killed by coming in contact with said poison in the cotton field after said cotton was sprayed."

As we read the record, it appears to be undisputed that the spray dust or insecticide used was an insect poison that was not only injurious to, but would kill, any insects, such as boll weevils and honey bees, on contact. There was no evidence to the contrary.

Webster defines "bee:" "Orig., the honey-producing insect Apis mellifera (syn. mellifica), usually disting. as honeybee; now, broadly, any of numerous membranous-winged, noncarnivorous insects."

It was not error to give an instruction which assumes an undisputed fact. *Wisconsin & Arkansas Lumber Company* v. *Brady,* 157 Ark. 449, 248 S. W. 278.

Other instructions were objected to by appellants, but it suffices to say that we have reviewed them all and find no error.

The judgment is affirmed.