SOUTHWESTERN BELL TELEPHONE COMPANY *v.* SMITH.

4-9709                                                  247 S. W. 2d 16

Opinion delivered March 17, 1952.

Rehearing denied April 14, 1952.

*Hill, Fitzhugh & Brizzolara* and *Pryor, Pryor & Dobbs,* for appellant.

*Bates, Poe & Bates,* for appellee.

HOLT, J.  Appellee, J. A. Smith, sued appellants to recover damages growing out of the alleged negligence of appellants in spraying a poisonous preparation, or solution, causing the death of three of appellee's cows.

A jury trial resulted in a verdict against both appellants in the amount of $600, and from the judgment is this appeal.

For reversal, appellants first contend that the evidence was not sufficient to support the verdict. We cannot agree.

In effect, the testimony showed that appellant, telephone company, had constructed its lines on appellee's land and within a pasture where the three cows, here involved, were grazing. Appellant, Nunn, was employed by the telephone company to spray (from a tank upon a truck) the vegetation under its lines with a poisonous solution or preparation (designed to kill such vegetation) "of equal amounts of esters of 2, 4-D and 2, 4, 5-T (2, 4-D Dichlorophenoxyacetic and 2, 4, 5-Trichlorophenoxyacetic) mixed with water," which was paid for by the company. The solution when delivered to appellant contained this: "WARNING: Seller makes no warranty of any kind, express or implied, concerning the use of these products. Buyer assumes all risk of use or handling, whether in accordance with directions or not," and "formulations are TOXIC (poisonous) and present HEALTH HAZARDS when swallowed, allowed to contact the skin or breathed in the form of vapors or spray mists."

There was also evidence that appellants knew they were spraying this poisonous preparation in a pasture where these cows were grazing.

Appellee, Smith, testified positively, that he saw these three cows eating the poisoned vegetation, that they were seemingly well and in good condition prior thereto. "Q. And you people or no one for you had placed any poisonous substance whatsoever on your farm? A. No, sir." He had had experience with poisoned animals and the cows acted as if poisoned. They frothed at the mouth and were so swollen that their legs "opposite to the ground wouldn't touch the ground, just held out, swelled as tight as an animal could be blown up."

Dr. E. N. McGrew, a qualified veterinarian, testified ! at, in his opinion, they died from eating the poisonous spray.

The above evidence was substantial and ample to support the verdict against both appellants. *St. Louis-San Francisco Railway Co.* v. *Fletcher,* 159 Ark. 344, 253 S. W. 12, 33 A. L. R. 445, and *The Hammond Ranch Corporation* v. *Dodson,* 199 Ark. 846, 136 S. W. 2d 484.

It is argued by the telephone company that appellant, Nunn, was an independent contractor and therefore it was not responsible for his acts and therefore not liable. We cannot agree with this contention.

In the very recent case of *McKennon* v. *Jones,* 219 Ark. 671, 244 S. W. 2d 138 (opinion delivered December 17, 1951) this same issue was involved. There, a similar poisonous spray was used by an employee and resulted in the killing of honey bees and the destruction of honey. We there said: "While it is true that as a general rule, the employer would not be liable for the negligence of an independent contractor, there are exceptions to this rule. One exception is that where the work to be performed is inherently dangerous, as here, the employer will not be permitted to escape liability for negligent injury to the property of another, by an employee, to whom the employer has delegated, or contracted, the performance of the work." See, also, *The Hammond Ranch Corporation* v. *Dodson, supra,* and *Kennedy* v. *Clayton,* 216 Ark. 851, 227 S. W. 2d 934.

Here, as indicated, the telephone company had a piece of work to perform which in its very nature was necessarily and inherently dangerous to livestock and it cannot be allowed to escape liability in its performance by delegating it to another to whom it has contracted such work. Both appellants were liable, in the circumstances.

It is also argued that the court erred in giving instruction No. 2 (as modified) as follows: "If you find from a preponderance of the evidence in this case under the instructions ⸴ the Court that the defendants did use,

mix and spray a chemical mixture on the vegetation along and under the telephone line in the cow pasture of the plaintiff on or about July 23, 1950, with the knowledge the plaintiff's cows might graze on such vegetation; that the three cows of the plaintiff grazed on and ate some of the vegetation after the chemical mixture had been sprayed thereon, if you find such to have been done; that as a result of the eating of the sprayed vegetation, if such was done, the cows of plaintiff died; and if you further find that the defendants, in the using, mixing and spraying of the chemical mixture, if they did, on the vegetation in plaintiff's pasture, carelessly and negligently did so, and that such carelessness and negligence, if any, resulted, as the proximate cause, in the death of plaintiff's cows, without fault or carelessness on the part of the plaintiff then you are instructed you may find for the plaintiff,'' for the reason that ''it does not require a finding that the defendants, in the exercise of ordinary care, knew or should have known that the product used by them would be poisonous to cattle,'' and also that it was a binding instruction.

Immediately following this instruction (No. 2) the court gave No. 3, as follows: ''If you find from a preponderance of the evidence under the instructions of the Court that the defendants had, or in the exercise of ordinary care should have had, knowledge of sufficient facts to have caused an ordinarily prudent person, in the same or similar circumstances, to believe that the Esteron Brush Killer (2, 4-D and 2, 4, 5-T) spray might reasonably be anticipated to kill the plaintiff's cows, and that such spray put out by them did in fact poison and kill the plaintiff's cows, then your verdict should be for the plaintiff.'' It thus appears that appellants' objection was fully covered in Instruction No. 3, and when the two are read together correctly stated the law.

We have consistently held that instructions must be considered as a whole and if, when so considered, they state the law correctly, then there is no error, 16 Arkansas Digest, page 810, § 295 (2).

Instruction 2 was not a binding instruction. It did not end with ''you *will* or you *must* find for the plain-

tiff,'' but with ''you *may* find for the plaintiff.'' In the circumstances, no prejudice could, we think, have possibly resulted to appellants.

Alleged errors in the giving, and refusal to give, other instructions have been considered and found to be without merit.

Finally, appellant, Nunn, contends that there was no intention on the part of the jury to return a verdict against both appellants, but against the telephone company only. This contention is also without merit. The record reflects that while the jury was trying to reach a verdict, some confusion arose as to the liability of each appellant and the jurors came before the court several times for additional instructions as to the form of their verdict and the court, after patiently and painstakingly trying to ascertain the jury's intention as to such liability, sent the jury back for further consideration with this final general directive: ''Now you can find for the plaintiff against one defendant, or you can find for the plaintiff against both defendants, or you can find in favor of one defendant or you can find in favor of both defendants.'' The jury then returned a verdict against both defendants (appellants).

There was no error in this procedure. It is always the duty of the trial court to see that the verdict rendered expresses the intention of the jury and in aid thereto, a poll of each juror may be had, as was done in the present case. As early as the case of *Neal et al.* v. *Peevy,* 39 Ark. 337, this court said: ''It is the right and duty of the trial court to see that the verdict is formal, and to amend it if it incorrectly expressed the *intention* of the jury.''

Accordingly, the judgment is affirmed.