**Paul D. McLOUTH and Blanche McLouth, his wife, Plaintiffs,**

v.

**GENERAL TELEPHONE COMPANY OF THE SOUTHWEST and J. E. Goeders, d/b/a Goeders Tree Surgeons, Defendants.**

**Civ. No. 688.**

United States District Court
W. D. Arkansas,
Texarkana Division.
Aug. 26, 1958.

Conway & Webber, Texarkana, Ark., for plaintiffs.

Arnold & Arnold, John O. Moore, Texarkana, Ark., for defendant General Telephone Co. of the Southwest.

Smith & Sanderson, Alex G. Sanderson, Jr., Texarkana, Ark., for defendant J. E. Goeders.

LEMLEY, Chief Judge.

This cause having been tried to the Court on August 18 and August 19, 1958, and the Court having considered the evidence and being well and fully advised doth make the following Findings of Fact and doth state the following Conclusions of Law, as follows to-wit:

Findings of Fact

1. The plaintiffs, Paul D. McLouth and Blanche McLouth, his wife, citizens of Miller County, Arkansas, have brought this action against the defendants, General Telephone Company of the Southwest, a Delaware corporation doing business in Arkansas, and J. E. Goeders, a citizen of Louisiana, doing business as Goeders Tree Surgeons, to recover for certain alleged damages to real estate owned by them in Miller County. It is the claim of the plaintiffs that employees of the defendant, Goeders, wrongfully sprayed certain hardwood trees on the property aforesaid with a hormone herbicide, consisting of a mixture of chemicals known as 2–4–D and 2–4–5–T in a solution of diesel oil and water, while said employees were engaged in the performance of a contract between the defendant telephone company and Goeders; it is alleged that as a result of this spraying some of the plaintiffs' trees died and others were damaged, and that the value of their property was thereby substantially depreciated. The amount in controversy, exclusive of interest and costs, exceeds $3,000.[1]

2. A number of the facts in the case are undisputed and may be summarized as follows:

The defendant, General Telephone Company of the Southwest, is a public utility which provides telephone service to the City of Texarkana, Arkansas-Texas and to adjacent rural areas, including the area along and adjacent to U. S. Highway No. 71 north of the city, and in connection with the rendition of said service it, of course, maintains lines of wires, and it is necessary from time to time for the telephone company to kill or cause to be killed brush and undergrowth underneath said wires in the rural areas served by it.

The plaintiffs own 20.9 acres of improved rural property, constituting their homestead, about four miles north of Texarkana, located on the east side of Highway 71. Their property fronts on the highway for a distance of 1320 feet, and during the year 1956 there was growing along their west property line,

1. This action was commenced in the Circuit Court of Miller County, Arkansas, and was removed to this Court prior to the adoption of the Act of July 25, 1958, 28 U.S.C.A. § 1332, which increased the jurisdictional amount in diversity cases to $10,000.

parallel to the highway and immediately adjacent to the lines of the telephone company running north and south along the highway right of way, a row of ornamental trees, consisting principally of Chinese elms, which Mr. McLouth had set out in 1926. For convenience we shall refer to this row of trees simply as the "Chinese elms" or "the elms." On the south the plaintiffs' property is bordered by a narrow country lane which runs east and west and intersects with Highway 71 at the southwest corner of the plaintiffs' property; immediately across this lane and running parallel to it is another line maintained by the defendant telephone company. On the plaintiffs' property just north of this lane and parallel to it is a row of mixed hardwood trees consisting of hickory, oak, sassafras and bois d'arc.

On June 29, 1956, the telephone company and the defendant, Goeders, entered into a written contract under the terms of which Goeders undertook to spray the brush and undergrowth under the telephone company's lines in Miller County, including its lines in the vicinity of the plaintiffs' property, and Goeders, acting through a crew of four men, subsequently entered upon the performance of said contract, using the hormone herbicide above described. The property of the active ingredients of that herbicide which renders it useful in weed control work is that it will kill broad leafed plants with which it comes in contact. Unfortunately, this herbicide does not confine itself in its reactions to noxious weeds and shrubs, but reacts nonselectively upon any broad leaf plant which it touches, including valuable field crops, and it will also kill or injure trees of the types growing along both the west and the south lines of the plaintiffs' property.

In the course of their work the Goeders crew sprayed their solution from a large tank mounted upon a truck; the actual application was from a nozzle which ejected the spray under variable pressures of from 200 to 400 pounds per square inch. Mr. Goeders and the members of his crew were not ignorant of the dangerous propensities of the substance which they were using, and the crew had instructions not to spray any valuable trees and not to do any spraying on any property without first obtaining the consent of the landowner concerned. As a matter of fact, it was the sole duty of one of the members of the crew to go ahead of his fellows and secure permission from the various persons upon whose property spraying was contemplated.

3. The spraying with which we are here concerned took place on August 2 or August 3, 1956, the exact date not being material. It is the theory of the plaintiffs that on one of those days the employees of the defendant, Goeders, negligently sprayed the brush underneath the telephone lines to the south of their property, and that as a result of this alleged negligence some of the spray drifted across the narrow country lane that we have mentioned and came in contact with some of the trees just north of that lane, injuring some and killing others; the plaintiffs further contend that the employees of Goeders wrongfully, intentionally, and deliberately sprayed the Chinese elms killing a number of them and damaging others. The plaintiffs' basic claim of damages is that the injuries to and destruction of their trees caused a substantial depreciation in the market value of their property, which alleged depreciation they are entitled to recover as actual damages; and they further claim that since the spraying of the Chinese elms was intentional and deliberate, they are entitled to have the damages to their property attributable to the spraying of those particular trees trebled in accordance with the provisions of Ark.Stats., Section 50–105.[2]

2. That statute provides in effect that any person who willfully or maliciously destroys or injures any tree "placed or growing for use or shade * * * on the land of another person" shall be liable for treble damages and costs. In Laser v. Jones, 116 Ark. 206, 172 S.W. 1024, it was held that where shade or

4. In their pleadings and in the course of the trial the defendants denied that they are liable to the plaintiffs in any sum whatever, and they also take issue with them as to damages. More specifically, while the defendants admit that the Goeders crew sprayed under the telephone company's wires south of the plaintiffs' property, they deny that such was negligently done; and with respect to the Chinese elms they take the position that those trees were not sprayed at all. In connection with the latter trees the defendants assert that spraying along the front of the plaintiffs' property was contemplated, but that it was not carried out because of the fact that the crew was unable to obtain the permission of either Mr. or Mrs. McLouth, both of the latter being away from home when such permission was sought.

In addition to the foregoing defenses, which are common to both defendants, the telephone company seeks to avoid liability on the ground that Goeders was an independent contractor; and, in the alternative, it contends that if it is held liable to the plaintiffs, it is entitled to judgment over against Goeders by virtue of an indemnity clause in the contract between them, and Goeders concedes that the telephone company is correct in this regard.

■ 5. Taking up first the question of the alleged damage to the Chinese elms, we find from a preponderance of the evidence that those trees were in fact sprayed by the Goeders crew, and that as a result of such spraying some of those trees were killed and others damaged. In making that finding we credit the testimony of the plaintiffs' witness, Mr. Walter Clements, that he saw the crew spraying one of those trees, and the testimony of Mr. Charles Alford, the Supervisor of the Pest Control Division of the Arkansas State Plant Board, who qualified as an expert, and who gave it as his opinion that all of the Chinese elms, as well as the trees growing along the plaintiffs' south line, had suffered 2-4-D or 2-4-5-T damage. Since Clements saw the crew spraying one of the elms, and since Alford testified that all of them had sustained hormone herbicide damage, and since there was no suggestion that any persons other than the Goeders crew had been using such an herbicide in the vicinity, it follows that the latter must have sprayed all of those trees.

We further find from a preponderance of the evidence that this spraying of the Chinese elms was intentionally and deliberately done. Not only did Mr. Clements describe what appears to have been an intentional and deliberate act, but also it is to be noted that the defendants do not even contend that such spraying was done inadvertently or accidentally; as stated, they take the fundamental position that those trees were not sprayed at all.

■ 6. As to the trees along the south line of the property, while there is no evidence that the members of the crew intentionally or deliberately sprayed any of those trees, we find from a preponderance of the evidence that as a result of the spraying underneath the telephone lines south of the country lane the herbicide drifted across said lane and damaged the plaintiffs' south line of trees; and we further find from a preponderance of the evidence that a person of ordinary prudence would not have sprayed south of the lane in such close proximity to the plaintiffs' trees in view of the prevailing wind directions and velocities on both of the days that have been mentioned, as shown by the official records of the United States Weather Bureau which were introduced in evidence, but would have chosen some other

ornamental trees, having no value as timber, but which enhance the value of property are destroyed or damaged, the measure of the landowner's damages is the difference between the fair and reasonable market value of the property immediately before and immediately after the injury or destruction of such trees, and that where the injury or destruction is malicious, said difference is to be trebled as provided by the statute.

# 500

time to do such spraying or some other method of applying the herbicide. Hence, we find that the members of the crew were guilty of negligence in spraying south of the lane, and that such negligence was the proximate cause of the damage to the plaintiffs' south line of trees.

In support of their claim that the members of the crew were guilty of negligence in spraying south of the country lane the plaintiffs introduced in evidence certain regulations of the Arkansas State Plant Board relating to the use of 2–4–D and 2–4–5–T, which regulations it was claimed that the defendants had violated. The latter contended, however, that the particular regulations involved applied only to the spraying of crops and did not apply to the spraying of brush. We find it unnecessary to pass upon those conflicting contentions because to our mind the crew was guilty of negligence irrespective of the applicability of the regulations in question.

■ 7. As to the actual damages sustained by the plaintiffs, we find that while the trees along their south line added somewhat to the value of their property, such enhancement was small, and that the diminution in value occasioned by the loss of said trees was correspondingly small, and that $200 would be fair and reasonable compensation therefor. However, with respect to the Chinese elms, they were ornamental trees which materially enhanced the value of the property, and we find that the injury to them has depreciated such value to the extent of $1,000. In making these determinations we have considered our view of the property which was taken just before the commencement of the trial in the company of counsel on both sides, in connection with the testimony of Mr. McLouth and his two expert witnesses and the two experts called by the defendants.

## Conclusions of Law and Discussion

1. This Court has jurisdiction of this cause and of the parties hereto.

■ 2. The Supreme Court of Arkansas has held that on account of the propensities of 2–4–D and 2–4–5–T to produce injury or damage to the property of others, a person making use of such substances cannot escape liability for such injury or damage by employing an independent contractor to make the actual application. See Southwestern Bell Telephone Co. v. Smith, 220 Ark. 223, 247 S.W.2d 16; Heeb v. Prysock, 219 Ark. 899, 245 S.W.2d 577; McKennon v. Jones, 219 Ark. 671, 244 S.W.2d 138; Hammond Ranch Corporation v. Dodson, 199 Ark. 846, 136 S.W.2d 484. Hence, assuming that as between the defendants themselves Goeders was an independent contractor, nevertheless if he is liable to the plaintiffs, the telephone company is also liable, but is entitled to judgment over against Goeders for any sums that it may be required to pay in satisfaction of the plaintiffs' claims.

■ 3. The plaintiffs are entitled to judgment against the defendants, jointly and severally, for the actual damage to their property, which we have found to be the sum of $1,200. And because the spraying of the Chinese elms was deliberate and intentional the plaintiffs are entitled to have their actual damages resulting from that particular spraying trebled in accordance with Ark.Stats., Section 50–105 as construed in Laser v. Jones, supra.

■ With regard to treble damages, it should be said that Laser v. Jones, supra, was decided without reference to Ark.Stats., Section 54–203, which provides that any person who shall "knowingly" cut down, destroy, or carry away any trees, timber or timber products, "contrary to the provisions of this act," shall be liable to the person injured for double damages; and in their complaint the plaintiffs invoked this latter section as an alternative to their claim for treble damages under Section 50–105. However, in the course of the view of the property which has been mentioned counsel for the defendants, in a discussion of this matter, conceded that Section 50–105 would be applicable if either of

said sections applied. Prior to the concession just mentioned we had given consideration to the question of which of the two sections was applicable and had arrived at the same conclusion, although said question has not been directly passed upon by the Supreme Court of Arkansas. It will be noted that the language of Section 50–105 rather closely resembles that of Section 54–203; and if the latter section is read out of context and as an independent statute it would appear that there is a possibility that the two statutes overlap, that is to say that a plaintiff in a given case might prove a state of facts which would entitle him at the same time to treble damages under Section 50–105 and double damages under Section 54–203; under such circumstances a question would arise as to which of the two statutes would apply and as to what criterion should be used in choosing between them. Cf. Peek v. Henderson, 208 Ark. 238, 185 S.W.2d 704, and Stair v. Jones, 223 Ark. 882, 269 S.W.2d 297, in the latter of which cases the trial court submitted to the jury both of the statutory measures of damages and the common law measure as well. Section 54–203, however, is not an independent statute but is part of the sixth section of Act 83 of 1883, which was a comprehensive statute dealing with timber, and must be read in connection with the first five sections, which are criminal provisions dealing largely with the larceny of timber. And when that section is so read, it is quite clear to us that it has no application to this case. Here, the defendants did not steal or convert to their own use any of the plaintiffs' trees, nor did they destroy any of such trees in the sense of cutting them down or uprooting them; they simply sprayed the Chinese elms with a chemical herbicide entirely unknown at the time that Act 83 of 1883 was enacted,

which spraying injured the trees to the extent that some of them died. Furthermore, it should be noted that Section 54–203 does not refer to the "injuring" of trees, while the word "injure" is expressly included in Section 50–105. Still further, Section 50–105, in its present form, is a much later statute than the 1883 enactment.[3]

4. Let a judgment be entered in favor of the plaintiffs against both defendants, jointly and severally, in the sum of $3,200 plus costs, said judgment to contain an appropriate provision for judgment over against Goeders in favor of the telephone company.

3. At the time of the spraying of the plaintiffs' trees Section 50–105 was Section 1 of Act 29 of 1937, which was a re-enactment of Section 1 of Chapter 153 of the old Revised Statute of Arkansas. Act 29 of 1937 contained no repealing clause; however, by Act 88 of 1957 the Legislature rewrote Section 1 of Act 29 of 1937 so as to add certain provisions not here material, and inserted an express repealer of all laws and parts of laws in conflict therewith. Both Peek v. Henderson and Stair v. Jones were decided prior to the 1957 statute.