**R. W. REEVES, Plaintiff,**

v.

**JOHN A. COOPER COMPANY, successor to Cherokee Village Development Co., Inc., and E. L. Keith, Defendants.**

**No. F–68–C–9.**

United States District Court
W. D. Arkansas,
Fayetteville Division.

Oct. 15, 1969.

---

Garner & Parker, Ft. Smith, Ark., Richard W. Mason, St. Joseph, Mo., for plaintiff.

Daily & Woods, Ft. Smith, Ark., Little & Lawrence, Charles L. Gocio, Bentonville, Ark., for defendants.

## OPINION

JOHN E. MILLER, Senior District Judge (sitting by designation).

Plaintiff seeks to recover for personal injuries and damages allegedly sustained by him on July 17, 1967, when he was kicked by a horse owned by the defendant Keith while participating in a horseback ride made available to guests of the defendant corporation.

Jurisdiction is established by diversity of citizenship and the amount in controversy.

Plaintiff alleges that the defendant corporation was negligent in failing to exercise reasonable care to make safe the activities advertised and offered as a part of its vacation package, in attempting to delegate to the defendant Keith a non-delegable duty of reasonable care for the safety of its guests, and in failing to protect its guests against injury at the hands of third persons when it was within its power to do so.

Plaintiff alleges that the defendant Keith was negligent in allowing the horse which kicked plaintiff to be a part of the trail ride because the horse had recently foaled and because Keith was aware of its propensity to kick other horses, in failing to warn plaintiff of the horse's propensity to kick, in failing to use some form of safety device to prevent the horse from kicking, and in allowing his agents and servants to neglect their duties while in the course of their employment.

In his answer Keith denies any negligence on his part, alleges that he is an independent contractor, pleads the defenses of contributory negligence as a total or partial bar to recovery, unavoidable accident and assumption of risk. The answer of the defendant Cooper specifically pleads the same defenses and alleges that Keith is an independent contractor, for whose negligence Cooper is not responsible.

Plaintiff introduced in chief certain depositions [1] and a letter from an attorney for defendant Cooper to one of the attorneys for plaintiff regarding plaintiff's medical expenses, and rested his case. Both defendants specifically agreed to the introduction of these items and orally moved for directed verdicts. The court deferred consideration of both motions and, at the close of all the evidence, took the matter under advisement.

The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52(a) of the Federal Rules of Civil Procedure.

The incident complained of occurred in Missouri, just across the Arkansas state line. No choice of law has been urged upon the court. It appears that there is no substantial difference between the law of Arkansas and that of Missouri regarding independent contractors, infra, and the jurisprudence of neither state has resulted in a definitive study of the law of equine vices. Dickie & Goelzer v. Henderson (1910), 95 Ark. 78, 128 S.W. 561; Putermann v. Simon (1907), 127 Mo.App. 511, 105 S.W. 1098.

The John A. Cooper Company owns and operates, among other things, Bella Vista Village, a massive land development and resort area near Bentonville, Arkansas. As part of an advertising scheme designed to lure potential purchasers of home sites to the area, the company offers free housing and the use of its recreational facilities to selected individuals, usually for a period of two days. Plaintiff's parents received such an offer by mail, accompanied by a brochure depicting individuals engaging in various recreational activities, including horseback riding, and an information sheet listing horseback riding as an organized activity. Plaintiff, who was shortly to marry, concluded that Bella Vista Village might well be a pleasant and inexpensive honeymoon site and, by agreement with the company, personally accepted the offer. It is conceded that plaintiff was an invited guest of the corporation.

E. L. Keith rents saddle horses, doing business as the K–Bar Dude Ranch, which comprises approximately four hundred acres located five miles north of Bella Vista Village. At the time of the accident and injury to plaintiff in 1967, Keith had an informal arrangement with Bella Vista Village under which guests of the latter might avail themselves of

1. At the beginning of the trial the court made an analysis of the pleadings of the parties, and stated that it had read all of the discovery depositions, and "they are not for the purpose of determining the issues. The issues are to be determined by the testimony or evidence that is heard in the court."

Then the court asked the attorneys if any of them desired to make an opening statement before proceeding with their evidence. None of the attorneys desired to make an opening statement, but Mr. Charles R. Garner, one of the attorneys for plaintiff, stated that since plaintiff had taken discovery depositions, that he, with the court's permission, "intends to introduce with permission of opposing counsel the depositions of Mr. and Mrs. Reeves, the deposition of E. L. Keith, and the deposition of the Doctor and rest our case. The oral testimony would add or detract nothing from what is in the depositions. With their permission we will do that and rest our case."

Mr. Garner further stated that plaintiff and his wife were residents of Marysville, Mo.; that Mr. Keith was a citizen of Bella Vista, Ark., and that the doctor was likewise a citizen of Marysville, Mo.

The court stated:

"We have a rule which requires by its terms that the evidence be introduced in open court. Just what effect an agreement or consent of the defendant would be that those depositions might be introduced as evidence and considered as evidence of the deponents, now, I do not believe the Court of Appeals would reverse the case for permitting that kind of procedure, but I am just calling your attention to it."

Both defendants raised no objection and specifically agreed to this procedure. But see, Holt v. Werbe (8 Cir. 1952), 198 F. 2d 910, 917.

In accordance with the announced intention of plaintiff, he introduced no ore tenus evidence in support of the allegations of his complaint, but the plaintiff and his wife were introduced in rebuttal for the sole purpose of contradicting certain statements made by defendant's witness Jeanne Keith.

free horseback riding. Upon registering at Bella Vista, guests were informed of the variety and location of the available recreational facilities. Guests who patronized the K–Bar Dude Ranch were requested by Keith to sign a sheet of paper, and the accumulated list of names was transmitted by Keith to Bella Vista at the end of each month, accompanied by a bill for services rendered. Keith was compensated by the corporation at the rate of one dollar for each name appearing on the list.

Plaintiff was informed of the availability and location of the K–Bar Dude Ranch when he registered at Bella Vista. On the following day, plaintiff and his wife drove to K–Bar, informed one of Keith's employees that they were from Bella Vista, and were given the promised free horseback ride. The facts surrounding the event are in dispute, but it appears that plaintiff was directed to ride a mare named "Goldy," and plaintiff's wife was given another mare named "Honey." They mounted without aid, but without difficulty, as both had some previous experience with horses, and neither horse exhibited a pernicious nature while in the corral area. Thirteen persons other than plaintiff and his wife participated in the ride. In addition, four trail guides employed by Keith accompanied the party. The chief guide warned those riding before they left the corral that the horses were to be kept in line during the ride, one following the other. In practice, the horses were kept one and one-half feet apart, from head to hip. The party left the corral in single file, with the plaintiff riding directly behind his wife near the end of the line. One guide led the group, one was positioned on each side near the middle of the line, and the other followed at the rear. It is admitted that the guides, other than the leader, were employed to keep the horses close together and to prevent those riding from pulling out of the line. On at least one occasion prior to the accident plaintiff had attempted to pull "Goldy" out of line and was warned of the guides. At a point approximately one-eighth of a mile down

the riding path from the corral, plaintiff again pulled his horse out of the line and alongside and to the left of "Honey," the horse ridden by his wife. "Honey" then attempted to kick "Goldy," at which point plaintiff, realizing his error, pulled back on "Goldy's" reins. His horse then wheeled to the right, its forequarters coming to rest immediately behind "Honey's" hoofs. "Honey" took full advantage of this second opportunity, fracturing plaintiff's left leg.

■ It is quite clear that E. L. Keith was an independent contractor, as that term is generally defined. The usual test in distinguishing an employee from an independent contractor is set forth in Ozan Lumber Co. v. Tidwell (1946), 210 Ark. 942, at page 949, 198 S.W.2d 182, at page 185, as follows:

"It has been said in many cases that the vital test in determining whether a person employed to do certain work is an independent contractor, or a mere servant, is the control over the work which is reserved by the employer. Broadly stated the rule is that, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor."

In Moore and Chicago Mill & Lumber Co. v. Phillips (1938), 197 Ark. 131, at page 137, 120 S.W.2d 722, at page 725, the court stated:

"By a long line of decisions this court is committed to the universal rule that, where the contractor is to produce a certain result, according to specific and definite contractual directions, agreed upon and made a part of the contract, and the duty of the contractor is to produce the net result by means and methods of his own choice, and the owner is not concerned with the physical conduct of either the contractor or his employees, then the contract does not create the relation of master and servant. This court has consistently accepted and stated the settled rule that even though control and direction be retained by the own-

er, the relation of master and servant is not thereby created unless such control and direction relate to the physical conduct of the contractor in the performance of the work with respect to the details thereof. St. Louis, I. M. & S. Ry. Co. v. Gillihan, 77 Ark. 551, 92 S.W. 793; Moore Lumber Co. v. Starrett, 170 Ark. 92, 279 S.W. 4."

In the case of Moaten v. Columbia Cotton Oil Co. (1936), 193 Ark. 97, at page 100, 97 S.W.2d 629, at page 630, the court stated:

"An independent contractor is one who, exercising an independent employment, contracts to do a certain piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work."

It is undisputed that the arrangement between the corporation and Keith was an informal one, under which Keith provided horseback riding to guests of Bella Vista Village and was compensated therefor by the corporation. The monthly statement and list of those riding constituted the only contact between the parties. There is no contention that Keith was in any manner subject to the control or instruction of the corporation. To the contrary, there is every inference that the company was solely interested in the availability of his services.

 The general rule is, of course, that where an independent contractor is employed to perform a work lawful in itself and not intrinsically dangerous, the employer, if not negligent in selecting the contractor, is not liable for the wrongful acts or negligence of such contractor. Rice v. Sheppard (1943), 205 Ark. 193, 168 S.W.2d 198; Hammond Ranch Corporation v. Dodson (1940), 199 Ark. 846, 136 S.W.2d 484; Froman v. J. R. Kelley Stave & Heading Co. (1939), 197 Ark. 545, 123 S.W.2d 1081; Humphries v. Kendall (1937), 195 Ark. 45, 111 S.W.2d 492; St. Louis, I. M. & S. Ry. Co. v. Gillihan (1906), 77 Ark. 551, 92 S.W. 793. The burden is clearly upon plaintiff to demonstrate that this case falls within an exception to the rule. Terry v. A. P. Green Fire Brick Co. (E.D.Ark.1958), 164 F.Supp. 184, 188.

 Plaintiff urges that the corporation attempted to delegate to Keith a non-delegable duty to exercise reasonable care for the safety of its guests. Cases relying on a non-delegable duty almost invariably involve work carried on by an independent contractor which is inherently or intrinsically dangerous unless proper precautions are taken, or a duty to an individual or the public arising from a special relation. Hopson v. United States (W.D.Ark.1956), 136 F. Supp. 804, 814; Southwestern Bell Telephone Co. v. Smith (1952), 220 Ark. 223, 247 S.W.2d 16; McKennon v. Jones (1951), 219 Ark. 671, 244 S.W.2d 138; Hammond Ranch Corp. v. Dodson, supra; Miller v. Johnson (1931), 184 Ark. 1071, 45 S.W.2d 41; Phegley v. Graham (1948), 358 Mo. 551, 215 S.W.2d 499, 6 A.L.R.2d 382; Mallory v. Louisiana Pure Ice & Supply Co. (1928), 320 Mo. 95, 6 S.W.2d 617. An activity is inherently dangerous when it is probable or likely that injurious consequences will attend the doing of the work. Terry v. A. P. Green Fire Brick Co., supra; Mallory v. Louisiana Pure Ice & Supply Co., supra. The court simply cannot conclude that horseback riding is such an activity. Nor is there any evidence that the corporation acquired any knowledge or was put on notice of a single negligent or dangerous act on the part of Keith. See, Schwartz v. Merola Bros. Constr. Corp. (1943), 290 N.Y. 145, 48 N.E.2d 299. Nor is there any evidence that the corporation was in any manner negligent in the selection of Keith. On the contrary, it is uncontradicted that the company conducted an extensive investigation in the general locality and found Keith's reputation to be unimpeachable. It can only be concluded that the company exercised reasonable care for the safety of plaintiff. Defendant John A. Cooper Company was negligent in no respect, and there is no liability on its part.

Nor was Keith negligent in any manner. It is true that the owner or bailor of a horse is generally held liable for any injuries caused by the horse where it appears that the horse had the pre-existing vicious propensity to do the particular act complained of, and where it further appears that the owner or bailor had knowledge thereof at a time prior to the act. O'Brien v. Gateway Stables (1951), 104 Cal.App.2d 317, 231 P.2d 524; Harris v. Breezy Point Lodge, Inc. (1953), 238 Minn. 322, 56 N.W.2d 655; Heath v. Fruzia (1942), 50 Cal. App.2d 598, 123 P.2d 560; Webber v. McDonnell (1926), 254 Mass. 387, 150 N.E. 189; Sandy v. Bushey (1925), 124 Me. 320, 128 A. 513. The rule of ascertaining scienter is that the knowledge need not necessarily be actual, in the ordinary acceptation of that term, either constructive or imputed notice being sufficient, and if in the exercise of reasonable diligence and common prudence the owner ought to have known that his animal was dangerously inclined and might, if unrestrained, inflict injury upon the person or property of another, he is chargeable with actual notice of vicious acts committed by it. Butts v. Houston (1915), 76 W.Va. 604, 86 S.E. 473. It is, however, uncontradicted that out of the 2,000–4,000 persons who rode Keith's horses during each of the summer months since he began operations in 1964, plaintiff is the only person who was kicked. "Honey," the villain in the instant case, had been a part of Keith's riding stable for three years at the time of the accident, and had never, to the knowledge of Keith and his employees, exhibited a fractious or vicious disposition. All of the horses used at K–Bar were trained to traverse the riding paths in a line, one following the other. This procedure had become such an ingrained habit that Keith and his employees customarily allowed small children to ride any of the horses, with the result that the horse involved invariably followed the riding path without deviation and without injury to its rider.

While there is some evidence that certain horses owned by Keith resented any attempt by a trailing rider to spur his horse out of line and would, on such occasion, attempt to kick the transgressor, there is not a shred of evidence that "Goldy" or "Honey" were ever participants in such conduct. Moreover, plaintiff was adequately warned in the corral area and again during the ride to keep his horse in line.

There is, in addition, no evidence that "Honey" had recently foaled. In fact, Keith and his employees specifically denied at trial that "Honey" had ever had a colt.

Finally, plaintiff's theory of simple tort negligence on the part of Keith's employees is without merit. Plaintiff's wife testified by deposition that prior to the accident, two of the four guides accompanying the party were riding in a nearby pasture and that, immediately after the accident, the lead guide told the two allegedly wandering that: "If you two had been minding your own business, this would never have happened." Mike Keith, the lead guide on the day of the accident, denied having made the statement and testified that it is common practice to station one guide on a path leading to the pasture referred to in order to prevent any of the passing horses from turning from the trail path into the pasture area. He denied that more than one guide was near the pasture. His testimony was corroborated by that of another guide present during the ride, and it was stipulated that the testimony of a third would merely be cumulative. Even if plaintiff's version of the facts is accepted as being true, the incident has little bearing on negligence or causation. In any event, plaintiff, as heretofore stated, had been warned for the second time to keep his horse in line shortly before the accident, and one of the remaining guides rode only a few feet from plaintiff.

In short, there is no liability on the part of the defendant Keith, either through the keeping of a dangerous animal or because of any negligence on the part of Keith or his employees. The injury to plaintiff, while unfortunate, was proximately caused by his own negligence. Had he remained in the line, as twice instructed, it is probable that no injury would have befallen him.

Therefore, judgment is being entered today dismissing the complaint of plaintiff against both defendants and requiring the parties to pay their own costs.