**Levon BROWN, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**No. LR–71–C–78.**

United States District Court, E. D. Arkansas, W. D.

May 10, 1972.

 

ta, against the United States, Monroe Love, Sheriff of Pulaski County, Arkansas, and O. A. Allen, a subordinate of Love and generally referred to as the Head Jailer of Pulaski County. The purpose of the suit is to recover pecuniary damages which plaintiff claims to have sustained as a result of episodes which occurred in the Pulaski County Jail in Little Rock, Arkansas, during the period from January 4, 1969, to about April 14 of that year in which Brown was confined in the jail as a federal prisoner in the actual custody of the Sheriff and his subordinates in charge of the jail.[1]

The complaint, as amended, alleges diversity of citizenship between Brown, on the one hand, and the individual defendants, on the other hand. The amount of his demand is $50,000. Jurisdiction of the claim against the Government is based on the Federal Tort Claims Act, 28 U.S.C.A. § 1346, and to some extent on 28 U.S.C.A. § 1331(a). Jurisdiction of the claim against the individual defendants is based upon diversity of citizenship, 28 U.S.C.A. § 1332, and on 28 U.S.C.A. § 1343(3), read in connection with 42 U.S.C.A. § 1983. Plaintiff is represented by capable counsel appointed by the Court after the defendants had answered the original complaint as first amended.

All of the defendants deny liability. The cause has been tried to the Court, and this memorandum incorporates the Court's findings of fact and conclusions of law. Historical facts of the case are not seriously disputed.

Brown and another individual, Clincy, were brought to Little Rock by Deputy United States Marshals from Omaha, Nebraska, in January 1969. The party arrived in Little Rock about 7:00 P.M. on Saturday, January 4, 1969, and plain-

John T. Lavey, Little Rock, Ark., for plaintiff.

Robert J. Brown, Chief Deputy Pros. Atty., Pulaski County, Little Rock, Ark., for Monroe Love and O. A. Allen.

James H. Rhodes, Asst. U. S. Atty., E. D. Ark., for United States.

## Memorandum Opinion

HENLEY, Chief Judge.

This is an action brought by Levon Brown, an inmate of the Federal Correctional Institution at Sandstone, Minneso-

---

[1]. During the period with which the Court is concerned, the Pulaski County Jail had been "approved" by the Federal Bureau of Prisons as a place for the confinement of federal prisons, and during that period there was in force a contract between the Bureau and the County under the terms of which the County agreed to keep federal prisoners in safe custody for the consideration of $1.75 per day per prisoner. Under Arkansas law the Sheriff is the keeper of the jail and has authority to employ, subject to budgetary limitations, a subordinate jailer or jailers.

tiff and his fellow were duly incarcerated in the jail which at that time was concededly overcrowded and understaffed. They were assigned initially to a common cell or "bull pen" on the second floor of the Jail which was already occupied by a substantial number of other prisoners, most of them being local men being held in jail awaiting trial on various and sundry State charges. They remained in that cell, along with other inmates, from January 4 until March 19 when they were placed in a smaller cell.

During that period of time Brown and Clincy were twice unlawfully assaulted and beaten by State prisoners. Additionally, in February Brown and Clincy were involved in a confrontation between inmates of the second floor and jail employees who had occasion to use tear gas to compel the inmates to leave their sleeping quarters and go into the so-called "day room." Plaintiff came into contact with some of the gas, and he claims that it caused him to develop a rash on his hands and injured his eyes.

The claim of Brown against the Government and his claim against the individual defendants necessarily overlap. He claims that Sheriff Love and Jailer Allen were guilty of negligence in placing him in a crowded cell without providing any protection against assaults from other inmates, and he claims that the Government, as well as the individual defendants, are liable on account of the alleged negligence of the latter. As to the Government he claims further that Government personnel were guilty of negligence in permitting him to be confined in an institution when they knew or should have known that he would be confined under conditions dangerous to his life or safety and without adequate protective safeguards. Going still further, plaintiff charges that his being confined as he was was not only negligent but was also violative of rights guaranteed to him by the Eighth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

All of the defendants make common cause in denying that plaintiff's confinement in the Jail was characterized, attended or tainted by any negligence, misfeasance, or malfeasance, and all take issue with him as to damages. The individual defendants contend that plaintiff's own negligence or misconduct proximately caused or contributed to his alleged injuries, and they plead that in any event his claim against them is barred by the applicable Arkansas statute of limitations. The Government alleges as a separate defense that the individual defendants were independent contractors, and that the Government is not responsible for their negligence or misconduct.[2]

■ Whether the plaintiff's claims be bottomed on the Constitution itself, including amendments thereto, or on the Torts Claims Act, or on 42 U.S.C.A. § 1983, or on the common law, the burden is upon him to establish by a preponderance of the evidence that his alleged injuries and damages were proximately caused by negligence or culpable conduct on the part of those having him in charge, and it is also incumbent upon him to prove the nature and extent of his damages.

■ Taking up first the question of damages, although plaintiff contends that the assaults and the affair of the tear gas of which he complains seriously and perhaps permanently injured him, that claim is refuted by the undisputed evidence in the case. The Court finds that while the two assaults and his exposure to the tear gas undoubtedly caused him some physical pain and perhaps mental anguish, he was not seriously or permanently injured and is not now under any physical disability attributable to the events that occurred while he was in jail in Little Rock. He has had no

---

2. The Government contended originally that plaintiff had failed to exhaust his administrative remedies as required by 28 U.S.C.A. § 2675; that contention has now been abandoned.

medical or hospital expenses; he has lost no time from work or any earnings. There is no evidence that his injuries were the result of any malice or intentional or oppressive conduct on the part of either of the individual defendants or on the part of any agent of the Government.

In such circumstances it is clear that this case would in no event justify an award of any large sum of money; and, indeed, any small sum awarded to plaintiff might be considered somewhat nominal. However, it is necessary to consider the questions of liability presented by the record.

The case is complicated by a number of factors which should be mentioned. Plaintiff is seeking to impose liability not only upon the Government but upon the individual defendants as well. His claim against the Government must have a federal basis; his claim against the individual defendants is based on both federal and State law. The claim against the Government is based in part on alleged conduct of salaried Government agents and employees and in part on the alleged conduct on the part of the individual defendants and their subordinates at the Jail. And there is a controversy over whether the Government would be responsible for actionable misconduct on the part of jail personnel who actually are employees of Pulaski County, hired by the Sheriff and paid out of funds appropriated by the Quorum Court of Pulaski County.

In view of those complicating factors, it may be helpful to look at underlying statutes and well established legal principles.

■ Section 1331(a) of 28 U.S.C.A. provides that the District Courts of the United States shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. It is clear that this statute is a purely jurisdictional statute and does not create any substantive cause of action.

Section 1332(a) of 28 U.S.C.A. is also a jurisdictional statute. It gives the District Courts original jurisdiction of civil actions in which the amount in controversy, exclusive of interest and costs, is more than $10,000, and where diversity of citizenship exists between the parties.

■ In connection with both of those sections the Court finds that the amount in controversy in this case is in excess of $10,000 if judged by plaintiff's demand, and that there is diversity of citizenship between the plaintiff, on one hand, and the individual defendants, on the other hand. To the extent that the claim of plaintiff against the individual defendants is based on diversity of citizenship, the rights of the parties are governed by the substantive law of the State of Arkansas.

Section 1343(3) of 28 U.S.C.A. vests the District Courts with jurisdiction of civil cases brought to redress the deprivation under color of State law of any right, privilege or immunity secured by the Constitution of the United States.

Section 1346(b) of 28 U.S.C.A. gives the District Courts jurisdiction of suits brought against the Government under the Tort Claims Act. The Tort Claims Act provides substantially that the United States shall be liable, subject to certain exceptions, for tort claims "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C.A., §§ 2674 and 2680.

Section 1983 of 42 U.S.C.A., states that every person who under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects or causes to be subjected any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ Section 4042 of 18 U.S.C.A. provides that the Federal Bureau of Prisons in the Department of Justice shall have charge of the management and regulation of all federal penal and correctional institutions; it is the duty of the Bureau to provide suitable quarters and provide for the safekeeping and subsistence of all persons charged with or convicted of offenses against the United States, and to provide for the "protection, instruction, and discipline" of all persons charged with or convicted of offenses against the United States. While section 4042 imposes certain duties on the Bureau of Prisons, it does not create any private cause of action in favor of a person who is damaged by a failure of the Bureau or its officers or employees to carry out the commands of the statute. Williams v. United States, 9 Cir., 1969, 405 F.2d 951.

The Bureau of Prisons is authorized by 18 U.S.C.A., section 4002 to contract with local authorities for the custody and care of federal prisoners, and Ark. Stats., Ann., section 46–409, requires the keeper of the jail in any county to receive and hold in custody any federal prisoner properly committed to him.

■■ In view of the foregoing, the Court is of the opinion that plaintiff's claim against the Government must be bottomed in the last analysis on the Tort Claims Act. The Court does not construe 42 U.S.C.A., section 1983 as creating any private cause of action against the federal Government, and, as has been seen, no private cause of action is created by either 18 U.S.C.A., section 4042, or by 28 U.S.C.A., section 1331(a).

■ That a federal prisoner who has sustained injury as a result of fault on the part of a Government employee may maintain an action against the Government under the Tort Claims Act was established by the holding of the Supreme Court in United States v. Muniz, 1963, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d

805. Whether he will prevail will depend upon whether "a private individual under like circumstances would be liable under state law. . ." 374 U.S. at 153, 83 S.Ct. at 1853. However, the immunity from suit which some States extend to those in charge of prisoners or convicts is not available to the Government since the duty of the Government to exercise care for the safety of its prisoners is affirmatively established by section 4042, 18 U.S.C.A. 374 U.S. at 164–165, 83 S.Ct. 1850.

■ The claim of the plaintiff against Love and Allen as individuals may be based on 42 U.S.C.A., section 1983 since in their dealings with plaintiff they were clearly acting under color of State law, although, of course, they were not authorized by Arkansas law to mistreat, abuse, or neglect prisoners under their care. Since diversity of citizenship exists between plaintiff and the individual defendants, his claim against them can also be based on the substantive law of Arkansas.

While no substantial body of Arkansas law yet exists dealing with the liability of jailers to prisoners for injuries inflicted by other prisoners, there is no reason to believe that the Arkansas law differs or will differ from that generally prevailing elsewhere in the United States.

■ It is well established that those holding prisoners or convicts in custody are not insurers of their safety. However, the custodians owe a duty to their charges to exercise ordinary care for their safety, and that duty includes the duty to use ordinary care not to expose a prisoner to an unreasonable risk of injury at the hands of some other inmate or inmates. See e. g. United States v. Muniz, supra; Holt v. Sarver, 8 Cir., 1971, 442 F.2d 304, aff'g Holt v. Sarver, E.D.Ark., 1970, 309 F.Supp. 362; Williams v. United States, supra; Holt v. Sarver, E.D.Ark., 1969, 300 F. Supp. 825; Muniz v. United States, S. D.N.Y., 1968, 280 F.Supp. 542; Johnson v. United States Government, E.D.Va.,

1966, 258 F.Supp. 372; Cohen v. United States, N.D.Ga., 1966, 252 F.Supp. 679. See also Logue v. United States, S.D. Tex., Corpus Christi Division, 1971, 334 F.Supp. 322. "Ordinary care" is a relative term; what would be ordinary care in one set of circumstances might not be in another set. In order to meet the requirement of "ordinary care" the care employed must be commensurate with the danger that is apparent or reasonably to be foreseen.

█ With respect to the liability of a warden or jailer for injuries inflicted upon an inmate by another inmate or other inmates the general rule is that liability exists if, but only if, the warden or jailer knew of the risk of such injuries or should have known of it and with such actual or constructive knowledge negligently failed to prevent them. 41 Am.Jur., Prisons and Prisoners, § 13, p. 894; see also Annotations in 46 A.L.R. 94, 50 A.L.R. 268, 61 A.L.R. 569; 14 A.L.R.2d 353; see also A.L.R.2d Later Case Service. That general rule has been applied to cases involving injuries resulting from the functioning of the so-called "kangaroo courts" which are permitted to exist in some jails. See e. g. Miller v. Owsley (Mo., 1967), 422 S. W.2d 39, and cases cited in 14 A.L.R.2d at 362–364.

█ Conditions or practices in a jail or prison may be so bad as to move a federal court sitting in equity in a case brought under 42 U.S.C.A., section 1983, to hold that the confinement of persons therein is a violation of federally protected rights, including the right to be free from cruel or unusual punishment. Holt v. Sarver, supra, 442 F.2d 304, 309 F.Supp. 362, and 300 F.Supp. 825. And, as a matter of fact, in a suit filed in 1970 Judge Garnett Thomas Eisele held that the Pulaski County Jail was unconstitutional and directed that improvements be made if the Jail is to continue to be used as a place of confinement. Hamilton v. Love, Sheriff, E.D.Ark., 1971, 328 F.Supp. 1182. Somewhat later in 1971 the writer rendered a similar decision as to the Pulaski County Penal Farm used as a place of confinement for persons convicted of misdemeanors. Little v. Cherry, E.D.Ark., 1971, Docket No. LR–71–C–89, no published opinion. Those cases, however, were all equity cases, and the decrees entered therein operated prospectively only. The incidents involved in the case now before the Court occurred substantially prior to the Court's first decision in the *Holt* litigation, more than a year before the *Hamilton* case was commenced, and more than two years before *Hamilton* was decided. The Court does not believe that those holdings should be applied retroactively and uncritically to a suit for money damages. Nor does the Court believe that an injured prisoner or convict is entitled to recover pecuniary compensation merely because he was injured while confined in a substandard or even unconstitutional institution and without regard to human negligence or culpability on the part of his keepers. That is not to say, of course, that it may not be negligence or culpable misconduct in some circumstances to place a person in such an institution if the officials putting him there or keeping him there know or should know of existing conditions and know or should know that the prisoner is being exposed to an unreasonable risk of harm. Cf. Kish v. County of Milwaukee, 7 Cir., 1971, 441 F.2d 901, 905.

█ The individual defendants contend, among other things, that plaintiff's suit against them is barred by limitations. To the extent that plaintiff relies for recovery on Arkansas law, his claim is, of course, subject to the relevant Arkansas statute of limitations; and to the extent that plaintiff relies on section 1983 his claim is also governed by the Arkansas statute of limitations that is most appropriately to be applied to the case. O'Sullivan v. Felix, 1914, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Glasscoe v. Howell, 8 Cir., 1970, 431 F.2d 863.

Returning to the facts, the claim of the plaintiff arises out of three sepa-

rate, distinct, and unconnected episodes, namely: the assault that took place on the evening of January 4, the assault that took place on March 19, and the tear gas incident that occurred between the dates of the two assaults.

The assault of January 4 was of the kangaroo court variety. Brown and his companion, Clincy, were assigned to Cell No. 8 on the second floor of the Jail; that cell was a large "bull pen" type cell having a capacity of thirty. As stated, it was occupied already by a substantial number of prisoners. After Brown and Clincy were put in the cell they were left alone with their fellow prisoners who made demands upon them for articles of clothing and personal property. Brown and Clincy yielded to that demand but were assaulted and beaten anyway. One of the other inmates, who is now confined in the Arkansas State Penitentiary, testified that the reason for the beating was that Brown and Clincy were out of State people.

The injuries received by Brown did not amount to much and did not require any medical attention or treatment. Brown made no complaint about the incident to any State or federal employee. His failure to complain may well have been due to fear of reprisal from the other inmates, but the fact remains that he did not complain.

The second assault, which occurred more than two months after the first, took place during the breakfast hour of March 19. Jail personnel brought breakfast trays to Cell No. 8, passed the trays through the bars, and departed. Again Brown and Clincy were alone with their cell mates. Some of the latter demanded that plaintiff and Clincy give up their food; they refused and were attacked and beaten. Brown was struck with a stick about the size of a broom, and his right eye was visibly injured. In the course of the second assault Brown and Clincy cried out for assistance; they were heard by jail personnel on the first floor, one of whom came to their assistance and quelled the disturbance. Brown and Clincy were then transferred to a smaller cell and had no further trouble.

As to the tear gas incident, the record, when considered in connection with Judge Eisele's opinion in Hamilton v. Love, supra, reflects that Cell No. 8 was divided into compartments. Some of those compartments were used for sleeping at night; another compartment was known as the "day room," and the prisoners were supposed to remain in that room during daylight hours. For some time the prisoners could move freely from the sleeping compartments to the day room and vice versa, and some of them took advantage of that ability to take naps in the sleeping compartments during the day. Such prisoners were at times unwilling or unable to go to sleep at night. The jail management decided to correct this situation by locking the door connecting the sleeping compartments with the day room after the inmates had gone to the day room in the morning. On the occasion in question the prisoners refused to leave the sleeping compartments in the morning. Jail personnel forced them to move by using tear gas on them; Brown came into contact with some of that gas. After the prisoners had moved, they were permitted to shower to remove particles of gas from their persons.

■ Having described the tear gas incident, the Court will dispose of it summarily. The Court finds that the use of the gas was reasonable and justified, and that any injury resulting to Brown from the use of the gas was trivial at most. The tear gas episode forms no basis for recovery and will not be discussed further.

Getting back to the second assault, it should be said that prior to that assault Brown had been indicted on felony charges by the federal Grand Jury for the Eastern District of Arkansas. He was arraigned before the late Judge Gordon E. Young in early March and entered a plea of not guilty; he was represented by appointed counsel. Thereafter, Brown indicated that he desired to change his plea to guilty, and was

brought before Judge Young on March 20, the day after the second assault. The injury to his eye was visible and the facts of the assault came to light. However, Brown assured Judge Young that his desire to change his plea was not in any way influenced by the assault. The Judge permitted the plea to be changed, and later sentenced Brown to the Penitentiary. In April he was taken to the Federal Correctional Institution at Texarkana, Texas, and was later transferred to the institution in Minnesota where he is now confined. Later in 1969 Brown attacked his conviction by means of a motion filed pursuant to 28 U.S.C.A., section 2255; he alleged that his change of plea had been brought about by the treatment that he had received while in jail. The writer considered that motion after Judge Young's death and denied it. An attempted appeal was not successful.

Returning to March 20, Brown was seen on that date by the Jail physician, Dr. Wassell of Little Rock. Dr. Wassell treated the injured eye with an ointment, and it required no further medication. After being seen by Dr. Wassell, Brown made no further requests for medical attention with respect to his eye or anything else.

The Court has now reached the point at which it must decide the questions of liability presented by the record. The Court is confined in its consideration to the case as made by the parties, and the burden of proof is on the plaintiff, except to the extent that the defendants rely on affirmative defenses.

 As has been seen, the individual defendants rely in part on a claim that the action is barred as to them by limitations. As to plaintiff's common law claim the Court agrees with the defendants. The Court finds that the applicable statute of limitations is Ark. Stats., Ann., section 37–203, which provides that all actions against sheriffs on account of official acts or omissions must be brought within two years after the causes of action accrue. Plaintiff's cause of action accrued more than two years before plaintiff's original complaint was presented to the Court. That pleading was not mailed from the institution at Sandstone until March 26, 1971, and the complaint was not actually filed until April 13 of that year. Plaintiff's cause of action had accrued fully by March 20, 1969. While section 37–203 does not refer in terms to deputy sheriffs or jailers, such officers or employees are the subordinates of the respective sheriffs, and the Court thinks that the subordinates are entitled to the benefit of the statute when sued on account of acts or omissions taking place in the course of their official duties or employment. The running of the statute was not tolled by the fact that Brown was confined outside the State after the middle of April 1969 because he was not so confined when his cause of action accrued. See Ark.Stats., Ann., sections 37–224 and 37–226.

As to plaintiff's claim based on 42 U.S.C.A., section 1983, the situation is not so clear. Plaintiff argues that the most appropriate Arkansas statute of limitations is Ark.Stats., Ann., section 37–206 which prescribes a three year limitations for actions based on liabilities imposed by statute. Glasscoe v. Howell, supra, and Arkansas decisions therein cited. Section 37–206 is a general statute whereas section 37–203 is a specific one and was not involved in *Glasscoe*, supra. However, the ultimate conclusion that the Court has reached renders it unnecessary for the Court to decide the question, and the Court will assume arguendo that the section 1983 claim is not barred.

As has been observed the claim of plaintiff against the individual defendants is based on their own alleged conduct, and his claim against the Government is based in part on that conduct. In addition, plaintiff would hold the Government liable on the theory that federal employees proper were guilty of negligence or misconduct which was a proximate cause of his injuries and the

Court finds it convenient to consider that theory first.

The Court does not consider that the plaintiff has made a case on the basis that the Bureau of Prisons and its personnel were guilty of negligence in approving the Jail as a place for the confinement of federal prisoners or in entering into a contract with Pulaski County for the custody and care of federal prisoners at the Jail.

The contract in force during the period of time with which the Court is concerned was entered into effective February 1, 1968, nearly a year before Sheriff Love took office. During January, February, and March, 1969, the Jail was overcrowded and understaffed, and the jail employees were essentially untrained. The only jail employee who had any training at all was Jailer Allen, and his training in jail management had been limited to a correspondence course dealing with that subject. As a class, the employees were retirees from other positions, and some of them were of advanced or advancing years. Allen himself was and is a retired member of the Little Rock Police Department. No effort was made by jail personnel to classify prisoners on the basis of anything but race, sex, and to a limited extent, age. During 1969 the Jail was racially segregated which tended to enhance the problem of overcrowding particular cells at particular times. While most of the prisoners were confined on the second floor, no jail employee had a duty station on that floor, and it was patrolled only sporadically by jail employees. There were some inmate trusties in the Jail who visited the second floor from time to time, but this Court found in the Holt litigation that inmate trusties are worthless as far as the safety of penitentiary inmates is concerned, and there is no reason to suppose that trusty jail inmates differ in that respect from their counterparts at the Penitentiary. To put the matter bluntly, the prisoners on the second floor were simply left to their own devices, and there were no effective means of communication between the second and first floors whereby assistance could readily be summoned from above.

But there is no convincing evidence in this record as to the extent of the Bureau's knowledge or information, if any, about the deficiencies at the Jail, and the Court is not prepared to say that the Bureau was negligent in making the 1968 contract or in keeping it in force, or with respect to inspecting the Jail.

Before leaving this particular phase of the case the Court does not deem it amiss to observe in passing that Little Rock is the largest city in Arkansas and is the principal federal court seat in the Eastern District of Arkansas; the Judges sit there regularly, and Little Rock is the headquarters of the United States Attorney and the United States Marshal for the District. In such circumstances it is at least arguable that the decision of the Bureau of Prisons to "approve" the Pulaski County Jail and to contract with Pulaski County for the keeping of federal prisoners in the Jail involved the exercise of administrative discretion and fell within the "discretionary function" exception appearing in the Tort Claims Act, 28 U.S.C.A. § 2680(a). However, the Court makes no firm holding on that question.

The Court is not able to find from the evidence anything that would justify it in holding the Government liable on the theory that members of the United States Marshals' Service were guilty of negligence that was a proximate cause of Brown's injuries. There is no evidence that the Deputy Marshals who brought Brown and Clincy to Little Rock from Omaha knew or should have known of conditions in the Jail or that they anticipated or had any reason to anticipate that he would be harmed by other inmates of the institution. Nor is there evidence of record which would show that the United States Marshal for the Eastern District of Arkansas or any resident Deputy Marshals knew or should have known that conditions in the Jail were such as to expose federal prisoners to the danger of assault from other in-

mates. Perhaps they had that knowledge, but the record does not establish its existence.

If the plaintiff had complained to the Marshal or his deputies after having been assaulted on January 4, it would certainly be arguable that they should have taken steps to prevent a recurrence of the episode, but he made no complaint about the original incident.

The question of the conduct of the individual defendants now recurs, and the Court is confronted at the outset with the claim of the Government that the Sheriff, the Jailer, and subordinate Jail employees were independent contractors so that the Government would not be liable for their acts or omissions. The validity of that contention is governed by the substantive law of Arkansas. Buchanan v. United States, 8 Cir., 1962, 305 F.2d 738; Hopson v. United States, W. D.Ark., 1956, 136 F.Supp. 804.

The relevant Arkansas law is well summarized by Senior Judge John E. Miller of the Western District of Arkansas in three reported opinions, the most recent of which is Reeves v. John A. Cooper Co., W.D.Ark., 1969, 304 F.Supp. 828; the others are Terry v. A. P. Green Fire Brick Co., W.D.Ark., 1958, 164 F.Supp. 184, and Hopson v. United States, supra.

In Reeves v. John A. Cooper Co., supra, 304 F.Supp. at 832, the Court said:

"The general rule is, of course, that where an independent contractor is employed to perform a work lawful in itself and not intrinsically dangerous, the employer, if not negligent in selecting the contractor, is not liable for the wrongful acts or negligence of such contractor. Rice v. Sheppard (1943), 205 Ark. 193, 168 S.W.2d 198; Hammond Ranch Corporation v. Dodson (1940), 199 Ark. 846, 136 S.W.2d 484; Froman v. J. R. Kelley Stave & Heading Co. (1939), 197 Ark. 545, 123 S.W.2d 1081; Humphries v. Kendall (1937), 195 Ark. 45, 111 S.W.2d 492; St. Louis, I. M. & S. Ry. Co. v. Gillihan (1906), 77 Ark. 551, 92 S.W. 793.

The burden is clearly upon plaintiff to demonstrate that this case falls within an exception to the rule. Terry v. A. P. Green Fire Brick Co. (E.D.Ark. 1958), 164 F.Supp. 184, 188.

"Plaintiff urges that the corporation attempted to delegate to Keith a non-delegable duty to exercise reasonable care for the safety of its guests. Cases relying on a non-delegable duty almost invariably involve work carried on by an independent contractor which is inherently or intrinsically dangerous unless proper precautions are taken, or a duty to an individual or the public arising from a special relation. Hopson v. United States (W.D.Ark. 1956), 136 F.Supp. 804, 814; Southwestern Bell Telephone Co. v. Smith (1952), 220 Ark. 223, 247 S.W.2d 16; McKennon v. Jones (1951), 219 Ark. 671, 244 S.W.2d 138; Hammond Ranch Corp. v. Dodson, supra; Miller v. Johnson (1931), 184 Ark. 1071, 45 S.W.2d 41; Phegley v. Graham (1948), 358 Mo. 551, 215 S.W.2d 499, 6 A.L.R.2d 382; Mallory v. Louisiana Pure Ice & Supply Co. (1928), 320 Mo. 95, 6 S.W.2d 617. . . ."

The Arkansas cases cited by Judge Miller in which plaintiffs have sought to hold contractees liable for the negligence of independent contractors indicate that in Arkansas the claim of "non-delegable duty" has arisen most often in situations where the activities which produced injury were inherently dangerous or constituted nuisances. However, speaking of the general rule that a contractee is not liable for the negligence of an independent contractor, carefully selected, the Court of Appeals for this Circuit took occasion to state in Buchanan v. United States, supra, 305 F.2d at 742: ". . . 'it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions'. Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 1937, 201 Minn. 500, 503, 277 N.W. 226, 228. . . ."

One type of duty that is generally considered non-delegable is a duty imposed by statute or ordinance for the

protection of the public from injuries resulting from the prosecution of the activity covered by the statute. In 41 Am.Jur.2d, Independent Contractor, section 38, it is said:

"As a general rule, if a statute or municipal ordinance requires one to do a certain thing or to take certain precautions for the protection of persons on or near his property, he cannot delegate such duty to an independent contractor and be released from liability in case the contractor fails to perform it. An exception to the general rule of nonliability of an employer for the negligence of an independent contractor or the latter's servants exists where the employer is under a statutory duty to perform or guard the work. In order that the employer may be charged with liability, however, the terms of the statute or ordinance in question must be of such a tenor as to subject him to a definite obligation. The violation of the statute in question must also have been the proximate cause of the injury complained of."

Applying the principles above stated to the situation presented here the Court has no hesitation in finding that in ordinary master and servant terms, the Sheriff and the jail personnel, including Allen, were independent contractors. More properly speaking, they were officers or employees of an independent contractor since the contract itself was between the Government and Pulaski County as a political entity. The Government had no right to control the day to day management of the Jail as it affected federal prisoners and made no effort to do so.

This brings us to the question of whether the Government's duty of care for the safety of its prisoners is a non-delegable one. The Government insists that it is not and cites in that connection the unpublished opinion of Judge Smith in Williams v. United States, decided in the Southern District of California in April 1971. In that case the Court squarely held that the Government is not liable under the Tort Claims Act for the negligence of local jailers in failing to protect a federal prisoner from an assault at the hands of a dangerous and perhaps deranged local prisoner.

The Court has some trouble with that holding and doubts that it will follow it. However, as in the matter of limitations, the Court finds it unnecessary to decide the question firmly and will assume for purposes of discussion that the Government would be liable for negligent acts or omissions of the individual defendants resulting in harm to the plaintiff.

As far as the conduct of the jail authorities is concerned, the heart of plaintiff's case is the theory that a jailer is automatically liable on account of injuries suffered by a prisoner at the hands of other prisoners if the prisoner in question is confined in a common cell with other occupants and if he and his fellows are not under essentially constant guard or supervision. It makes little difference whether that theory is expressed in terms of "negligence per se" or of "absolute liability" based on an alleged violation of an inmate's right to personal security while in jail to the extent that such a right is protected by the Constitution of the United States. The Court cannot accept that broad theory of liability.

An examination of the cases heretofore cited indicates that in some of them wardens have been held liable for inmate inflicted injuries suffered by inmate plaintiffs, and that in others liability has been found not to exist. The Court thinks that it may be said as a fair generalization that liability has been imposed where the jailer was aware, or should have been aware, that the confinement of a prisoner under particular conditions or in particular circumstances presented a risk of what may be termed a "clear and present danger" of injury to the inmate, rather than the merely inherent danger which is an inseparable part of prison life, and with that awareness, either actual or constructive, failed to take reasonable steps to prevent the injury.

In this case Love and Allen knew, of course, how many prisoners were in the jail and how and where they were housed, and they knew what personnel they had, and they knew that second floor inmates were not being guarded constantly and that the second floor was not being patrolled regularly by jail employees.

 However, the Court simply does not find from a preponderance of the evidence in this case that on or after January 4, 1969, the jail employees who dealt with plaintiff and his companion realized, or should have realized, that to put them into Cell No. 8 with other prisoners and to leave them there would subject them to any imminent danger of assault from the other inmates. There is no evidence in this record that established inmates of common cells in the Jail made it a practice to assault and beat newcomers, or that such practice, if it existed, was known to or should have been known to the Sheriff and the Head Jailer or to other jail employees. There was nothing about Brown and Clincy to suggest that they as individuals would be particularly susceptible to assault and there is no evidence that the other inmates in the cell were considered to be dangerous or assaultive, at least as far as other inmates were concerned, or that there was any reason for them to have been so considered.

As has been said more than once, the jailers knew nothing about the initial assault, and naturally with the passage of time they would have had every reason to believe that Brown and Clincy were getting along satisfactorily with their cell mates, and by mid-March there would have been no reason whatever to believe that plaintiff and his fellow would be attacked as a result of their refusal to comply with a demand that they give up their breakfasts to other prisoners.

The Court concludes ultimately, therefore, that there can be no recovery in this case. The Court is well aware that this ultimate conclusion involves a rejection of plaintiff's basic theory of liability, and that if the Court is wrong in rejecting it, the Court's decision is wrong. Plaintiff has a right to present that question to the Court of Appeals and in all probability will attempt to do so.

A judgment will be entered dismissing the complaint in its entirety.

The Court wishes to thank appointed counsel, Mr. John M. Lavey of Little Rock, for his services to plaintiff. While the Court is not now asking Mr. Lavey to represent plaintiff in connection with an appeal, it will ask him to go so far as to advise plaintiff of his appellate rights and assist him in preparing and submitting a notice of appeal and affidavit of poverty should plaintiff indicate a desire to appeal.

Since plaintiff is a pauper, there would be no point in taxing him with costs and that will not be done.