**Lou Costello HAMILTON, Special Administratrix of the Estate of Billy Hamilton, Deceased, Plaintiff,**

**v.**

**Clyde COVINGTON, Fred Riddling, Jr., Dale Honea, Mac Almond, A. G. Pierce, Cornelius Lewis, Junior Boswell, Lambert Armstrong, the Quorum Court, and United States Fidelity and Guaranty Company, Defendants.**

**Ken SENTER, Plaintiff,**

**v.**

**Clyde COVINGTON, Defendant.**

**Civ. Nos. T–76–35–C and 77–4021.**

United States District Court,
W. D. Arkansas,
Texarkana Division.

Jan. 17, 1978.

---

Tackett, Moore, Dowd & Harrelson, Texarkana, Ark., E. Ben Franks, Lesher & Franks, Texarkana, Tex., for plaintiff in No. T–76–35–C.

Honey & Smith, Prescott, Ark., for defendant Clyde Covington.

Charles L. Honey, Prescott, Ark., for defendant Riddling and defendant in No. 77–4021.

Joe M. Fore, Prescott, Ark., for defendants Almond, Pierce, Boswell, Garrett, Cornelius & Armstrong.

James H. McKenzie, Prescott, Ark., for defendant U. S. Fidelity & Guaranty Co.

Harkness, Friedman & Kusin, Texarkana, Tex., for plaintiff in No. 77–4021.

## MEMORANDUM OPINION

PAUL X WILLIAMS, Chief Judge.

These cases arise from a fire which burned the Nevada County, Arkansas Jail on January 31, 1976. Mrs. Lou Costello Hamilton, administratrix of the estate of Billy Wayne Hamilton, contends that her deceased husband who was incarcerated in the jail was killed from smoke inhalation from the fire. Ken Senter contends he was

injured by the fire. At the time of the fire there was no jailer in attendance at the jail to unlock the cells and release the inmates.

Neither complaint states whether Billy Hamilton or Ken Senter was in the Nevada County jail pursuant to a conviction or whether they were pre-trial detainees. Each complaint does allege that Hamilton and Senter were locked in the jail; that Sheriff Clyde Covington left the jailhouse to attend a basketball game; that there were no deputy sheriffs or jailers in attendance at the jailhouse; that a fire accidently broke out in the kitchen of the jail; that members of the Prescott police department later arrived and unlocked the cells; that Billy Wayne Hamilton died of smoke inhalation and that Ken Senter was injured by the fire and smoke. The plaintiffs seek damages under 42 U.S.C. § 1983. These cases are now before the Court on various motions to dismiss.

## LAMBERT ARMSTRONG

■ Defendant Armstrong contends that he was not elected to serve as a member of the Nevada County Quorum Court until 1977. The fire occurred on January 31, 1976. The plaintiffs do not contest this fact and the Court therefore finds that the complaint against Lambert Armstrong should be dismissed.

## U.S.F.&G.

■ The plaintiffs have named U.S. F.&G. as a defendant contending that it is liable under Arkansas's direct action statute, Ark.Stat.Ann. § 66–3240. The statute provides as follows:

> When liability insurance is carried by any cooperative nonprofit corporation, association or organization or by any municipality, agency or subdivision of a municipality or of the State or by any improvement district, school district, or by any other organization or association of any kind or character, not subject to suit for tort, and any person, firm or corporation suffers injury or damage to person or property on account of the negligence or wrongful conduct of any such organiza-tion, association, municipality or subdivision, its servants, agents or employees acting within the scope of their employment or agency, then such person, firm or corporation so injured or damaged shall have a direct cause of action against the insurer with which such liability insurance is carried to the extent of the amount or amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy, and such insurer shall be directly liable to such injured person, firm or corporation for such damages to the extent of such coverage in such liability insurance policy, and the plaintiff or plaintiffs may proceed directly against the insurer regardless of the fact that the actual tortfeasor may not be sued under the laws of the state.

Plaintiffs contend that U.S.F.&G. was Sheriff Covington's liability carrier at the time of the fire and that a direct action against it is authorized by the above-quoted statute.

A plain reading of the statute shows that when a corporation, association, organization, municipality, agency, school district, improvement district or other such organization or association is immune from tort liability, its liability carrier may be sued directly. The statute does not extend to individuals who may be immune. *Savage v. Spicer*, 235 Ark. 946, 362 S.W.2d 668 (1962).

The complaint against U.S.F.&G. should therefore be dismissed.

## THE QUORUM COURT

Each original complaint named only Sheriff Clyde Covington as the defendant, but by amendment the various other parties-defendant were added. In the introductory paragraph of each amended complaint, the plaintiff recites that it is against "Fred Riddling, Jr., Dale Honea, Mac Almond, . . . The Quorum Court of Nevada County, Arkansas, United States Fidelity and Guaranty Company and Clyde Covington." Each complaint also alleges that the "Defendants were guilty of malfeasance and misfeasance in office . . . be-

cause of their failure to provide a jailer to assist prisoners in emergency situations . . . ."

■ Federal Rule Civil Procedure, Rule 10(a) provides in part as follows:

In the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

The term "complaint" includes amended complaints which add additional parties. Neither plaintiff made any attempt to adhere to this rule, but merely captioned the amended complaints as "Plaintiff vs. Clyde Covington."

■ At the hearing on the motions to dismiss, the defendants were unsure whether the Quorum Court as an entity was in fact a defendant to the suit. Apparently there was no attempt to serve the Quorum Court as an entity, although the presiding officer of the Court, County Judge Fred Riddling, Jr., was served.

42 U.S.C. § 1983 provides a cause of action against "persons." It has often been held that a political body established by state law is not a person within § 1983. This test excludes from the operation of § 1983 municipal corporations (*Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960)) even though the only relief sought is equitable (*City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973)). The same rule applies to prevent § 1983 actions against counties (*Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)) and boards of county supervisors (*Veres v. County of Monroe,* 364 F.Supp. 1327, 1330–1331 (E.D. Mich.1973) aff'd without op., 6 Cir., 542 F.2d 1177; *Riley v. Atkinson,* 413 F.Supp. 413 (N.D.Miss.1975)).

As pointed out in *Gay Students Org. of Univ. of N. H. v. Bonner,* 509 F.2d 652, 655 (1st Cir. 1975) the question of whether an entity is a "person" within § 1983, is separate from the question of immunity. Even if the "person" requirement of § 1983 is satisfied, there remains the issue of whether he or she may be immune from liability for money damages. The issue of immunity is seldom relevant to petitions for declaratory or injunctive relief. *See Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

The action against the Quorum Court as an entity, must be dismissed because it is not a person within the meaning of § 1983.

## INDIVIDUAL MEMBERS OF QUORUM COURT

Under Ark.Stat.Ann. § 17–401 the county judge together with the majority of the justices of the peace of each county constitute the County Quorum Court whose principal duties are to levy taxes and make necessary appropriations for county expenses. Ark.Stat.Ann. § 17–409 expressly authorizes the quorum court to appropriate money "to defray the expenses of keeping persons accused or convicted of crime in the county jail."

Ark.Stat. § 46–402 gives the sheriff of the county "custody, rule and charge of the jail." Section 46–412 provides as follows:

Whenever the sheriff of any county of this state shall be of the opinion that the jail of his county is insufficient to secure the prisoners that may be therein committed, it *shall* be his duty to give notice thereof to the county court, and said court if the jail cannot be immediately repaired and made safe and secure, *may* by an order to be entered on its minutes, direct the sheriff *to employ a guard sufficient for the guarding and safe-keeping of the prisoners;* but such guard shall in no instance exceed three [3] persons, and in case said insufficiency in the opinion of said sheriff shall occur in vacation of said county court, it shall be the duty of said sheriff to give notice thereof to the county judge of such county, whereupon, if said jail cannot be immediately repaired and made safe and secure, said county judge may, by an order in writing, direct said sheriff to employ a guard for the purpose, and not exceeding the number aforesaid, for such length of time as he

may deem necessary, not exceeding the second day of the actual meeting of said county court at any regular, adjourned or special term thereof. Provided, the said guard shall not be allowed a sum to exceed two dollars [$2.00] for each twenty-four [24] hours. [Emphasis Added.]

The plaintiffs have brought suit against some of the individual members of the Nevada County Quorum Court contending that they are liable for damages for failure to provide a guard "sufficient for the . . safekeeping of the prisoners."

The defendants have moved to dismiss the complaint on various grounds, one of which is that they contend the suit against them as individuals is in reality a suit against the Quorum Court, a "body politic" which has been held an improper party defendant to a 42 U.S.C. § 1983 action.

■ 42 U.S.C. § 1983 provides for a cause of action against state officials who act when they are clothed with the authority to so act by virtue of their official position. The individual members of the Quorum Court cannot contend that they fall outside 42 U.S.C. § 1983 since they are being sued for acts or omissions committed in the course of their duties as members of the Quorum Court. *See Gay Students Org. of the Univ. of New Hampshire v. Bonner,* 509 F.2d 652, 655 (1st Cir. 1974.)

■ The individual quorum court members also contend that they are totally immune from liability for money damages due to their status as justices of the peace.

The plaintiffs charge the members of the quorum court with failure to provide a jail attendant. This type of omission, which constitutes the basis for plaintiffs' complaints does not relate to any judicial function of the justices of the peace, but instead relates to their activities as members of a county legislative body. The degree of immunity available to the members of the quorum court will therefore be determined as analogous to county supervisors, instead of as justices of the peace performing judicial functions. See *Pierson v. Ray,* 386 U.S. 547, 553–554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966) (recognizing judicial immunity for acts committed within their judicial jurisdiction) and *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1879) (Judge not immune for ministerial acts); *Doe v. Co. of Lakes,* 399 F.Supp. 553, 556 (N.D.Ind.1975).

■ Having determined that the degree of immunity available to individual members of the quorum court will be determined in light of the fact that any cause of action against them arose from their duties as legislators, we address the question of the degree of legislative immunity available to them. We follow *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975) and find that the immunity is not absolute for members of a legislative body charged with certain duties concerning the conditions of county jails. In finding county commissioners entitled to a qualified immunity, Judge Robinson stated in *Adler v. Lynch,* 415 F.Supp. 705, 712 (D.Neb.1976):

The defendants in the present case are elected members of a local governing body. While their duties include the enactment of local ordinances, *see generally Tenney v. Brandhove, supra* [341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)], they derive their powers from the state legislature, and exercise a limited jurisdiction over matters specifically committed to their discretion. Neb.R.S. §§ 23–104 et seq. (reissued 1974). In the Court's judgment the nature of their duties is such as to be distinguishable from the type of judgment and discretion exercised by judges and legislators who enjoy absolute immunity under § 1983 because they must conceive public policy from the myriad policy options open to the sovereign, *Pierson v. Ray, supra; Tenney v. Brandhove, supra;* and similar in significant respects to the type of discretion exercised by executive officials who have a more limited jurisdiction, and, must confine their discretion to matters which are more or less specifically defined within the state's public policy. *Scheuer v. Rhodes, supra* [416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90]; *Sterling v. Constantin,* 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932).

As pointed out in *Imbler v. Pachtman*, 424 U.S. 409, 419 note 13, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1975), an absolute immunity "defeats a suit at the outset" whereas a qualified immunity is a matter of defense to be determined in light of all the evidence presented at trial. Since the individual members of the quorum court are entitled to only a qualified immunity, their motions to dismiss must be denied.

The individual members of the Nevada County Quorum Court also contend that the complaint simply fails to state a cause of action against them under 42 U.S.C. § 1983. They contend that the complaint merely charges them with negligence and that as a matter of law the deprivation of a constitutional right must be caused by something "more than mere negligence" to state a cause of action for money damages under § 1983. To support this position the defendants rely on cases which concern a custodian's liability for deprivation of medical treatment or for assaults by fellow inmates. The medical treatment cases are collected in 51 A.L.R.3d at 111 and the assault cases, in 41 A.L.R.3d at 1021.

In Arkansas the responsibility for the condition of county jails rests largely with the Sheriff. Ark.Stat.Ann. § 46–402. The Sheriff has the duty to notify either the quorum court or the county judge if an additional guard needs to be hired to make the jail "safe and secure." The duty to inspect the jail to see if it is safe, does not rest with the quorum court, but with the grand jury. Ark.Stat.Ann. § 46–408. In light of these statutorily delegated duties we find that no quorum court member can be found liable in damages for the injuries resulting from the fire in the Nevada County jail unless he personally knew that the jail was left completely unattended for more than insubstantial amounts of time.

Secondly we hold, on the basis of the Arkansas statutes concerning county jails, that the individual members of the quorum court, including the county judge, cannot be held liable for damages unless the sheriff (or the county judge) had notified the quorum court of the need for an additional jailer and the individual court member fully informed, deliberately voted against appropriating the necessary funds, if the funds could have been appropriated or allocated without violating any provision in Ark. Stats.Ann. §§ 17–401 through 17–926 which was then effective. (Ark.Stat.Ann. § 17–408 requires the Clerk to record the votes of the quorum court members.) The court also finds that a lack of notice or prohibition by Arkansas statute is a matter of defense and cannot be considered by motions to dismiss.

For the purposes of the motions to dismiss we must read the complaint most favorably to the plaintiff and give the plaintiff the benefit of all inferences. If we infer that the named defendants were presented with the request to appropriate money for an additional jailer and with full information voted against the measure when the appropriation or allocation would not have violated Arkansas law, the defendants still urge that the complaint fails to state a cause of action against them.

*Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) taught that members of school boards who take action which violates others' constitutional rights (expelling children from school for a minor infraction without affording the students an opportunity to be heard) are liable in damages under § 1983 if the member knew or reasonably should have known such action was violative of the United States Constitution. In the case at bar, the act of voting to appropriate or to not appropriate money to hire an additional custodian (or lack of any action whatsoever) can only be said to be as intentional as the act of the individual school board members in *Woods* when they voted to expel the students. The school board members were held to be personally liable if they knew or should have known that their actions were violative of the students' civil rights. The individual quorum court members can be held in damages only if they knew or reasonably should have known that inmates of the Nevada County jail had a constitutional right to have a jailer present for all except

an insubstantial amount of time and knowingly took actions violative of this right.

It is fundamental that one who is incarcerated by the state retains certain rights, including the right to be reasonably safe from physical harm. This principle was enunciated in the first modern "prison case" in Arkansas and served as the basis for enjoining the prison custodian from requiring labor which would endanger a prisoner's life or health and requiring the prison to provide reasonable medical attention. *Talley v. Stephens,* 247 F.Supp. 683 (E.D. Ark.1965).

In another well-publicized Arkansas case, *Jackson v. Bishop,* the Court of Appeals for the Eighth Circuit found the use of a leather strap violative of the Eighth Amendment. The Court gave nine reasons for its decision, two of which related to the physical well-being of the inmate. *Jackson v. Bishop,* 404 F.2d 571 (8th Cir. 1968).

In 1969, Judge Henley found certain conditions at Cummins Prison unconstitutional. One such condition was the prison's failure to take steps to protect inmates from assaults by their fellow inmates. *Holt v. Sarver,* 300 F.Supp. 825, 830–831 (E.D.Ark.1969 "Holt I.") Overcrowded "isolation" cells were also held unconstitutional on the grounds, *inter alia,* that they were "hazardous to health." *Holt I* at 833

In Holt II, 309 F.Supp. 362 (E.D.Ark. 1970) Judge Henley enumerated the conditions at Cummins which he found violated the prohibition against cruel and unusual punishment. It is apparent that the physical health and the safety of the inmates were of prime consideration. This Court therefore holds that it is a well-established and well-publicized constitutional principle that persons convicted of a crime have a constitutional right to be reasonably safe from physical harm while incarcerated. The custodian owes the prisoner a duty to use reasonable measures to protect him from harm, even though the harm may not originate with the custodian as in cases of assaults by fellow inmates.

The duty to protect the inmate includes the duty to provide reasonable safety precautions concerning fire, such as by providing fire extinguishers and fire escapes (among other duties). *Hamilton v. Schico,* 338 F.Supp. 1016, 1017 (E.D.La. 1970). The failure to take such precautions places the inmates in "constant danger of losing their lives should a fire occur in the prison." *Ibid.,* at 1017. The existence of the danger is a factor in rendering the prison violative of every inmate's right to be free from cruel and unusual punishment regardless of whether a fire has actually occurred.

It is also a well-established constitutional principle that the conditions of incarceration for pre-trial detainees "must not only be equal to, but superior to, those permitted for prisoners serving sentences [following convictions]." *Hamilton v. Love,* 328 F.Supp. 1182, 1191 (E.D.Ark.1971). The Eighth Amendment is not appropriate to judge the conditions with respect to pretrial detainees, as those who are incarcerated awaiting trial are presumed innocent and "should not have to suffer any 'punishment' as such, whether 'cruel and unusual' or not." *Ibid.,* at 1191.

On the basis of the above-cited cases, which, with one exception, all originated within the State of Arkansas, this Court finds that either the Eighth or Fourteenth amendment is violated when those charged with care for incarcerated persons fail to take reasonable measures to protect the lives and safety of their wards in the event fire should break out in the jailhouse.

The complaints at bar charge the members of the quorum court with failing to provide a jailer who would be on duty at all times. Conceivably county authorities could fulfill this duty to the inmates without providing a person to be in attendance at all times, such as with fire alarms and smoke detectors which sound at the fire station (to name only two instances). But if adequate precautions are not taken it seems that ordinary care for the inmates' safety requires an individual in attendance

for all but insubstantial periods of time or an individual, who among other duties, frequently checks the jailhouse for fire. A violation of this duty renders the conditions of incarceration unconstitutional and subject to being enjoined.

In *Brown v. United States,* 342 F.Supp. 987 (E.D.Ark.1972) Judge Henley considered a claim for damages by a federal prisoner who contended he had been assaulted and tear-gassed while being housed in the Pulaski County Jail. The plaintiff brought a Federal Tort Claim action for negligence on the part of the United States for permitting him to be confined in an "unsafe and dangerous" jail. He also sought damages from the county sheriff and head jailer under 42 U.S.C. § 1983 and under common law tort principles for negligence in failing to adequately protect him from assaults by fellow inmates. The Court found no liability under § 1983, because the incidents occurred before the conditions of the Pulaski County Jail were declared unconstitutional in *Hamilton v. Love,* 328 F.Supp. 1182 (E.D.Ark.1971). Judge Henley also stated (342 F.Supp. 987, 993):

> Nor does the court believe that an injured prisoner or convict is entitled to recover pecuniary compensation merely because he was injured while confined in a substandard or even unconstitutional institution and without regard to human negligence or culpability on the part of his keeper. That is not to say, of course, that it may not be negligence or culpable misconduct in some circumstances to place a person in such an institution if the officials putting him there or keeping him there know or should know that the prisoner is being exposed to an unreasonable risk of harm.

In the case at bar, the incident occurred almost ten years after the initial modern prison case in Arkansas and six years after the Pulaski County Jail had been declared unconstitutional. We therefore decline to hold that the complaint fails to state a cause of action under § 1983 against the individual members of the quorum court, as it is apparent that under the tests enunciated by Judge Henley, the plaintiff could possibly prove a case against the members of the Quorum Court.

The county judge is a voting member of the quorum court (Ark.Stat.Ann. § 17–406) and also has additional responsibilities for county jails under Ark.Stat.Ann. § 46–412. The complaint against him cannot therefore be dismissed on pleadings alone. Though the Court is aware that judges performing judicial functions are absolutely immune from liability for money damages, Judge Riddling is not being charged with any malfeasance or nonfeasance in his role as a judge, but instead as a county administrator or member of a legislative body having limited legislative discretion. *See Doe v. Co. of Lake,* 399 F.Supp. 553 (N.D.Ind.1975). Under the principles applicable to members of the quorum court it would be error to dismiss the complaint against County Judge Riddling and his motion to dismiss should at this time be denied.

### THE SHERIFF

Sheriff Covington has filed no written motion to dismiss. At the oral argument held concerning the other defendants' motions to dismiss, the sheriff's counsel announced that he wished to adopt the motions to dismiss and supporting briefs previously filed by various defendants.

Rule 7(b), F.R.Civ.P. requires motions to be in writing "unless made during a hearing or trial." The sheriff's motion will be considered a valid motion as plaintiffs' counsel raised no objection and as the issues adopted by Sheriff Covington were identical to those to which plaintiffs were prepared to respond.

The sheriff contends that the complaint against him should be dismissed for failure to state a cause of action. He contends that the complaint merely charges him with negligence and that "something more" than negligence is required to give rise to damages under 42 U.S.C. § 1983. There is no question but that the actions complained of were performed under color of state law.

The Court finds that this is not a simple negligence case, but is a case of charging the sheriff with violating the inmates' constitutional rights to reasonably safe conditions during confinement. The duty of "safekeeping the inmates of a county jail" rests largely with the sheriff. Ark.Stat. Ann. 46–402. When additional guards are necessary it is his duty to initiate the process of hiring an additional guard for the jail. Ark.Stat.Ann. § 46–412. The complaint against Sheriff Covington cannot be dismissed since it is possible for the plaintiffs to prove that Sheriff Covington breached the duty to provide a reasonably safe place of confinement imposed by the United States Constitution and Ark.Stat. Ann. §§ 46–402 and 46–412. It is also possible for plaintiffs to show that Sheriff Covington is liable in money damages for such acts under the principles of *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). His motion to dismiss should be denied.

Subsequent to the submission of this matter on the motions to dismiss the plaintiffs were permitted to file amended complaints which properly pleaded 28 U.S.C. § 1343 as a basis for subject matter jurisdiction. The Court has considered both the original pleadings and the amendments in the light of the motions to dismiss and passed upon the same as though the amendments were made at the time the complaints were filed.

The Clerk has prepared orders which have been entered dismissing Lambert Armstrong. The Clerk will prepare orders dismissing U.S.F.&G. and the Quorum Court as an entity and denying the motions to dismiss of the individual members of Quorum Court, the County Judge and the Sheriff.